**Terrence RICHARDSON, Appellant**

v.

**John E. WETZEL, and
Debra K. Sauers.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs June 21, 2013.

Decided Aug. 6, 2013.

---

Terrence Richardson, pro se.

Jaime B. Boyd, Assistant Counsel, Mechanicsburg, for appellees.

BEFORE: LEADBETTER, Judge, McCULLOUGH, Judge, and COVEY, Judge.

OPINION BY Judge McCULLOUGH.

Terrence Richardson (Richardson) appeals, *pro se,* from the September 28, 2012 order of the Court of Common Pleas of the Thirty–Seventh Judicial District, Forest County Branch (trial court), which sustained the preliminary objections of John E. Wetzel, Secretary of the Department of Corrections (DOC), and Debra K. Sauers, Superintendent at the State Correctional Institution at Forest (collectively "the DOC Defendants"), and dismissed Rich-

ardson's complaint with prejudice. We affirm.

■ On December 19, 2011, Richardson instituted this civil rights action against the DOC Defendants by filing a complaint and motion to proceed in *forma pauperis* (*IFP*). After the trial court granted Richardson *IFP* status, Richardson filed an amended complaint and then a seconded amended complaint.

In his seconded amended complaint, Richardson averred the following. Shortly after Richardson saw a television news story concerning unclaimed money that the federal government has for citizens, he mailed correspondence to the Internal Revenue Service (IRS) on December 20, 2010, seeking information about any unclaimed property or tax credits that the IRS may have that belong to him. By letter dated February 2, 2011, the IRS informed Richardson that it issued him a check for $6,157.00 on September 3, 2010, and that if he has not received the check, he should complete and sign the enclosed Form 3911. On February 10, 2011, Richardson sent the IRS a completed Form 3911. (Second Amended Complaint, ¶¶ 7–10.) Also entitled "Taxpayer Statement Regarding Refund," a Form 3911 is used to trace refund checks, and the form requires the taxpayer to fill out information concerning whether he or she received and signed the refund check and whether the refund check was lost, cancelled, or destroyed.[1]

Approximately six months later, in August 2011, Richardson wrote to H & R Block in an attempt to obtain assistance with his interaction with the IRS. On August 24, 2011, the DOC Defendants directed that misconduct charges be instituted against Richardson for possession of contraband and unauthorized use of the mail because Richardson was in the process of filing a fraudulent tax return with the IRS. On August 30, 2011, Richardson was found guilty of the misconduct charges and received a sanction of 45 days in the restrictive housing unit. During the misconduct hearing, Richardson was handcuffed pursuant to DOC policy, and a correctional officer held documentary evidence that Richardson sought to present as evidence, namely the February 2, 2011 letter from the IRS, but was prohibited from doing so. According to Richardson, he "never violated any written PA–DOC policy, or any law, with respect to his communications with the IRS." (Second Amended Complaint, ¶ 22.) Based upon these averments, Richardson asserted that the misconduct charges were fabricated, and he alleged that the DOC Defendants retaliated against him for exercising his rights to free speech under the First Amendment of the United States Constitution, U.S. CONST. amend. I, and 37 Pa.Code § 93.2.[2] (Second Amended Complaint, ¶¶ 11–25.)

On August 20, 2012, the DOC Defendants filed preliminary objections to the second amended complaint. In these objections, the DOC Defendants argued that the complaint should be dismissed for lack of subject matter jurisdiction and for failure to state a claim upon which relief can

1. To view a copy of a Form 3911 visit http://www.irs.gov/pub/irs-pdf/f3911.pdf.

2. The First Amendment to the United States Constitution provides as follows:
Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances.
U.S. Const. amend. I. The regulation at 37 Pa.Code § 93.2 states that "[i]nmates are permitted to correspond with friends, family members, attorneys, news media, legitimate business contacts and public officials."

be granted (demurrer). As part of the preliminary objections, the DOC Defendants attached documents concerning the misconduct charges and their disposition. These documents reflect that Richardson was found guilty of misconduct by a hearing examiner on the ground that Richardson had been incarcerated and unable to work since 2005, and, therefore, his attempt to file a tax refund claim with H & R Block for the 2009 year constituted unauthorized use of the mail to file a fraudulent tax claim. Richardson then filed administrative appeals, and ultimately the misconduct charges were affirmed at the level of final review. During the hearing and the appeal process, Richardson maintained his innocence by claiming that he corresponded with H & R Block to obtain an unclaimed tax refund. The hearing examiner and the administrative tribunals rejected this contention "as very unrealistic." (The DOC Defendants' Preliminary Objections, Exhibits A, D, H.) [3]

■ By order dated October 3, 2012, the trial court sustained the DOC Defendants' preliminary objections and dismissed the second amended complaint with prejudice. In so doing, the trial court concluded that it lacked subject matter jurisdiction on the basis that Richardson's complaint essentially requested the court to review the DOC's prison misconduct proceedings, which, barring exceptional circumstances, are not subject to judicial review. The trial court further concluded that the second amended complaint failed to state a

claim as a matter of law on the ground that the DOC found that Richardson attempted to use mail services to file a fraudulent tax return and, therefore, the DOC Defendants did not violate Richardson's First Amendment rights. (Trial court op. at 4–5.)

On appeal, Richardson asserts that the trial court erred in dismissing his complaint because the prison misconduct charges were "fabricated" and were used as a "vehicle ... to retaliate against [him] for engaging in his protected communications with the IRS." (Richardson's brief at 13.)

■ "[T]he question presented in a demurrer is whether, on the facts averred, the law indicates with certainty that no recovery is possible. In reviewing a lower court's decision to grant a demurrer, our Court's standard of review is de novo." *Stilp v. General Assembly,* 601 Pa. 429, 435, 974 A.2d 491, 494 (2009) (citations omitted).

■ In reviewing preliminary objections, "[a]ll well-pled facts in the complaint, and reasonable inferences arising from those facts, are accepted as true. However, unwarranted inferences, conclusions of law, argumentative allegations or expressions of opinion need not be accepted." *Wilson v. Marrow,* 917 A.2d 357, 361 n. 3 (Pa.Cmwlth.2007) (citation omitted). Further, Pennsylvania is a fact-pleading jurisdiction; consequently, a pleading must not only apprise the opposing party of the asserted claim, "it must also formulate the

---

**3.** We note that pursuant to 28 U.S.C. § 1346(a)(1), the federal district courts have concurrent, original jurisdiction with the federal Court of Claims over cases where the taxpayer's filing of a Form 3911 is unsuccessful at the administrative level before the IRS, and the taxpayer seeks to obtain a tax refund from the IRS because, among other things, the tax refund was lost, destroyed, or never received. *See Doolin v. United States,* 918

F.2d 15 (2d Cir.1990); *Lucas v. Internal Revenue Service,* (S.D.W.Va., Civil Action No. 2:03–0339, filed March 4, 2004), 2004 WL 759252. According to Internal Revenue Manual (IRM) 21.4.2, if the IRS determines that a Form 3911 refund claim is not valid, it will notify the taxpayer of its denial and inform the taxpayer of his or her right to sue in federal court.

issues by summarizing those facts essential to support the claim." *Sevin v. Kelshaw,* 417 Pa.Super. 1, 611 A.2d 1232, 1235 (1992).

"[T]he First Amendment to the United States Constitution has long been interpreted by the courts as including a general right to communicate by mail." *Bussinger v. Department of Corrections,* 29 A.3d 79, 84 (Pa.Cmwlth.2011). In *Yount v. Department of Corrections,* 600 Pa. 418, 426–29, 966 A.2d 1115, 1120–21 (2009), our Supreme Court held that to prevail on a First Amendment retaliation claim, the complainant must state sufficient facts to show that: (1) he engaged in constitutionally protected conduct; (2) the retaliation against that conduct resulted in adverse action; (3) the protected conduct was a substantial and motivating factor for the retaliation; and (4) the retaliatory action did not further a legitimate penological goal. *Id.*

In addition, this Court has cautioned that:

[a] claim of retaliation is insufficiently pled where the prisoner merely alleges that he was charged and found guilty of misconduct. Otherwise, under the guise of claiming retaliation, we would turn a case filed in our original jurisdiction into a thinly disguised impermissible appeal of the decision on the misconduct conviction.

*Brown v. Blaine,* 833 A.2d 1166, 1171 n. 11 (Pa.Cmwlth.2003) (citing *Edmunson v. Horn,* 694 A.2d 1179 (Pa.Cmwlth.1997)).

For purposes of this appeal, this Court need not decide whether the facts averred in Richardson's complaint satisfy the first three prongs of the *Yount* test. We conclude that the alleged facts are insufficient to meet the fourth prong because they fail to demonstrate that the retaliatory action—the misconduct charges and the 45 days Richardson spent in the restrictive housing unit—did not further a legitimate penological goal.

In *Yount,* our Supreme Court noted that the final element for a First Amendment retaliation claim places the burden of proof on the complainant to affirmatively disprove a legitimate penological goal. *Id.* at 426–29, 966 A.2d at 1120–21. According to the court, the reason for this requirement stems from the "potential for abuse" inherent in retaliation claims and also a policy of judicial deference to the prison officials' "legitimate interest in the effective management of a detention facility." *Id.*

At least in the First Amendment context, our Court has yet to issue a published opinion applying the *Yount* test. However, in a recent, unpublished memorandum opinion, *Cruz v. Department of Corrections,* (Pa. Cmwlth, No. 52 C.D.2012, filed December 6, 2012), 2012 WL 8655012, this Court considered whether an inmate pled a viable First Amendment retaliation claim in his complaint. In *Cruz,* the inmate alleged that on July 7, 2007, he filed an informal grievance with the superintendent of the correctional institution, complaining that the correctional officers and other members of the security office harassed him and his female visitor. On July 25, 2007, the officers conducted an investigative search of the inmate's cell and confiscated juice and ice cream tickets. A few hours later, the inmate was charged with misconduct for possession of contraband, namely marijuana residue that was found in an ashtray. The hearing examiner found the inmate guilty of the misconduct, sanctioned hi m to 60 days of disciplinary confinement, and the inmate served his detention. On administrative appeal, the review committee vacated the hearing examiner's determination, remanded to the hearing examiner for another hearing, and the hearing examiner later dismissed the misconduct without prejudice because he

mistakenly believed that a piece of glass from the testing vials was the end or butt of a cigarette. The inmate filed a civil rights complaint asserting the above facts and a First Amendment retaliation claim, which the trial court dismissed for failing to state a claim upon which relief can be granted.

On appeal, a unanimous panel of this Court affirmed. We concluded that the facts averred in the inmate's complaint were insufficient to demonstrate that the retaliatory action did not further a legitimate penological goal. Specifically, we stated:

> [The inmate] argues on appeal that the illegal act of fabricating misconduct reports does not further a legitimate penological goal. This argument relies on the premise that the DOC Defendants purposefully falsified [the inmate's] misconduct charge. However, [the inmate] has not pled facts sufficient to show that his misconduct charges were, in fact, falsified. Accordingly, the trial court did not err in determining that [the inmate] failed to state a cause of action for retaliation.

*Id.*, slip op. at 12.

We conclude that our reasoning in *Cruz* applies in the instant case. Although Richardson asserts that the misconduct charges were fabricated, his complaint does not contain any factual averments that could sustain the inference that the DOC Defendants purposely falsified his

misconduct charges because he was communicating with the IRS.

■ For instance, consistent with our standard of review, we accept as true Richardson's allegation that he was unable to officially submit the February 2, 2011 letter from the IRS into evidence before the hearing examiner. However, the attachments to the DOC Defendants' preliminary objections confirm that the hearing examiner and the administrative appeal tribunals were aware of and considered the contents of the letter, but nonetheless found Richardson's assertion of innocence not credible.[4] *See Brown*, 833 A.2d at 1171 n. 11 (stating that a complainant must allege more than the fact that he was charged and found guilty of misconduct in order to state a retaliation claim under the First Amendment). In any event, the February 2, 2011 letter from the IRS, standing alone, does not prove that Richardson engaged H & R Block for an innocuous reason, much less demonstrate that the misconduct charges were pre-textual and retaliatory in nature, having no rational basis in fact or law.

Moreover, the only other relevant averment in the complaint regarding the DOC Defendants' penological goal is Richardson's statement that he "never violated any written PA–DOC policy or any law." (Second Amended Complaint, ¶ 22.) However, this statement is not a well-pleaded fact; rather, it is a conclusion of law that need not be accepted as true for purposes of preliminary objections. *Marrow*, 917

---

**4.** While ordinarily a demurrer must be limited to facts appearing on the face of the challenged pleading, "a limited exception to the rule against speaking demurrers exists for documents filed in support of a demurrer where a plaintiff has averred the existence of certain written documents and premised his cause of action upon those documents." *Barndt v. Department of Corrections*, 902 A.2d 589, 591 n. 2 (Pa.Cmwlth.2006). Here, Rich-

ardson's First Amendment retaliation claim is grounded on the theory that the misconduct proceedings were fabricated, and Richardson references the proceedings in his complaint. Therefore, we conclude that the DOC Defendants' attachments of the decisions of the hearing examiner and the administrative tribunals are proper materials to be considered when ruling on a demurrer. *See id.*

A.2d at 361. Therefore, in the absence of sufficient factual averments to establish that the misconduct charges were fabricated and that Richardson's restrictive housing confinement did not further a legitimate penological goal, we conclude that the trial court did not err in dismissing Richardson's complaint with prejudice.

Accordingly, we affirm.

## ORDER

AND NOW, this 6th day of August, 2013, the September 28, 2012 order of the Court of Common Pleas of the Thirty–Seventh Judicial District, Forest County Branch, is affirmed.

